UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MARKCUS RAYMOND MAY,<br><br>　　　Plaintiff,<br><br>vs.<br><br>TWIN FALLS COUNTY SHERIFF'S OFFICE; TOM CARTER; JAKE BENSON; HEARTGRAVE; RONALD ALVEY[1]; RANDALL SLICKERS; LOU PROBASCO, and DOES I-X,<br><br>　　　Defendants. | Case No. 1:12-cv-00228-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Currently pending before the Court in this civil rights case is a Motion for Summary Judgment filed by Defendants Carter, Benson, Alvey, and Probasco. (Dkt. 13.) All parties who have appeared in this action to date have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. (Dkt. 12.) *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having reviewed the briefing in this case, the Court concludes that oral argument is unnecessary. Accordingly, the Court enters the following Order.

---

[1] Defendant Ronald Alvey is incorrectly identified by Plaintiff as Allen Alvey in the Complaint.

**MEMORANDUM DECISION AND ORDER - 1**

## UNCONTESTED CLAIMS AND UNSERVED DEFENDANTS

In his response to the Motion for Summary Judgment, Plaintiff concedes the following: (1) that all claims against Defendants Probasco and Slickers should be dismissed because the evidence does not support a claim against them; (2) that Defendant Hartgrave should be dismissed for lack of service; and (2) that Plaintiff did not exhaust his administrative remedies as to a separate claim of verbal abuse. (Response, Dkt. 22, pp. 2-4.) Accordingly, the claims against Defendants Probasco and Slickers will be dismissed with prejudice, and the claims against Defendant Hartgrave[2] and the claims for verbal abuse will be dismissed without prejudice.

In addition, to the extent that Plaintiff has alleged that Twin Falls County is liable for constitutionally deficient medical care provided to Plaintiff (Complaint, Dkt. 1, ¶ 37), those claims will be dismissed with prejudice, as they are derivative of the claims against Defendant Probasco and Dr. Slickers. Further, "Nurse Jane Doe" and Defendant Does I-X have never been identified or served; therefore, all claims against them will be dismissed without prejudice.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 13)

1. **Standard of Law**

    A. *Summary Judgment*

    Summary judgment is appropriate where a party can show that, as to any claim or

---

[2] Deputy Heartgrave's name is spelled "Hartgrave" in jail records.

defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327.

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The requirement is that there be no genuine dispute as to any *material* fact. "Material facts are those that may affect the outcome of the case." *See id.* at 248. The moving party is entitled to summary judgment if that party shows that each material issue of fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the materials cited do not establish the presence of a genuine dispute, or that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P.56(c)(1)(A)&(B); *see T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 322). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P.56(c)(3).

Material used to support or dispute a fact must be "presented in a form that would

**MEMORANDUM DECISION AND ORDER - 3**

be admissible in evidence." Fed. R. Civ. P.56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P.56(c)(4).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. The evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue (dispute) as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Rule 56(e)(3) authorizes the Court to grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P.56(e)(3).

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, Plaintiff must show the existence of four elements: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused

**MEMORANDUM DECISION AND ORDER - 4**

(3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Section 1983 is "'not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

2.      **Excessive Force Claims against Individual Defendants**

   A.      *Standard of Law*

Plaintiff has brought his excessive force claims under the Eighth Amendment and Fourteenth Amendments, but it appears that he actually was a pretrial detainee on January 15, 2011, when the incident that is the subject of the Complaint occurred. He entered the Twin Falls County Jail in May 2010 (Complaint, Dkt. 1, ¶ 15), and he was not sentenced and convicted in his state criminal action until May 20, 2011.[3]

While the substantive due process clause of the Fourteenth Amendment is implicated in excessive force cases for pretrial detainees, the Supreme Court has held that such claims should be analyzed under a more specific constitutional provision, rather than generalized notions of due process, if one is applicable. *Graham v. Connor*, 490 U.S. 386, 394 (1989).  A citizen being arrested or investigated is protected from excessive force by the Fourth Amendment, and a convicted prisoner is protected from excessive force by the Eighth Amendment  *Graham*, 490 U.S. at 394.

---

[3] Public record of case history (Twin Falls County Case No. CR-2010-0006208) found at https://www.idcourts.us/repository/caseHistory.

**MEMORANDUM DECISION AND ORDER - 5**

The Ninth Circuit has held that the Fourth Amendment provides the proper standard for assessing an excessive force claim for a pretrial detainee, but has done so only in instances when the use of force occurred within hours of the arrest and before arraignment. *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1197 (9th Cir. 2002); *Lolli v. County of Orange*, 351 F.3d 410 (9th Cir. 2003). In *Graham v. Connor*, 490 U.S. 386, 396 (1989), the United States Supreme Court observed that an analysis of an excessive force claim "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake." The analysis requires "careful attention to the facts and circumstances in each particular case," which, depending upon whether it is in a pre- or post-arrest setting, may include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

The court's examination of the circumstances surrounding the use of force should be made from the viewpoint of a reasonable officer on the scene, "rather than with the 20/20 vision of hindsight." *Id.* That is, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

Other circuits have relied on the Eighth Amendment standard set forth in *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1984) for pretrial detainees who reside at a jail facility:

**MEMORANDUM DECISION AND ORDER - 6**

whenever prison officials stand accused of using excessive physical force, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See, e.g., Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010); *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, any efforts made to temper the severity of a forceful response, and the extent of any injury inflicted. *Hudson*, 503 U.S. at 7.

Both standards have similar elements to determine whether the amount of force used was reasonable under the circumstances. The Court finds that, under either standard, genuine disputes as to several material facts exist, precluding summary judgment.

    **B.**    *Facts and Discussion*

The Court begins with the material facts that are undisputed. On January 15, 2011, Plaintiff was a pretrial detainee on lockdown status at the Twin Falls County Jail. During that time period, he was permitted one hour of recreation time, and one hour of day room time. Plaintiff had completed his recreation time, had showered, and believed he had approximately ten minutes of his time left, and so he began talking on the telephone.

Deputy Beechum[4] came over the intercom and told Plaintiff to go back to his cell because he was not supposed to be out of his cell. Plaintiff did not go back to his cell, but told Deputy Beechum that he still had time left in the day room. Officer Beechum told Plaintiff a second time to go to his cell. Plaintiff again did not go to his cell, but instead asked for a sergeant. (Plaintiff's Declaration, Dkt. 22-1, ¶¶ 15-19.)

Because Plaintiff has refused Deputy Beechum's instructions twice, Deputies Hartgrave, Alvey, and Benson were called to escort Plaintiff back to his cell. Plaintiff again asked for a sergeant.

At this point, Plaintiff's story and the deputies' stories diverge. Plaintiff alleges that, during the escort, a nurse called out Plaintiff's name, "May." Plaintiff alleges that he had been expecting pain medication because he had just had outpatient surgery to remove a bullet lodged in the back of his head several days earlier. (Plaintiff Declaration, Dkt. 22-1, ¶¶ 22-23.) The deputies do not mention the nurse or the medication in their version of events.

There is a genuine dispute as to whether, as they reached Plaintiff's cell, Officer Hartgrave told Plaintiff to get his pills from the nurse, but when Plaintiff turned to go to the nurse, Defendant Alvey grabbed his arm and tried to jerk him toward the cell, and Deputy Benson hit him on the back of the head;[5] or whether there was no nurse, and

---

[4] Plaintiff spells this name "Beacham," but the jail records show a spelling of "Beechum." (Dkt. 18-3, p. 2.)

[5] Plaintiff has changed his allegation from the time of the Complaint, where he alleged that "[o]ne deputy forcefully struck Mr. May with a closed first in the back of his head"

**MEMORANDUM DECISION AND ORDER - 8**

Plaintiff simply continued resisting the escort to his cell, causing the deputies to use additional force to place him in his cell.

Deputy Alvey declares that Plaintiff pulled away from Alvey's grasp on Plaintiff's arm and ran into Deputy Hartgrave, whereupon Hartgrave grabbed Plaintiff and pulled him into the cell, causing Plaintiff to fall on his backside as a result of the momentum. (Compare Plaintiff Decl., Dkt. 22-1, ¶¶ 22-24, with Ron Alvey Declaration, Dkt. 17, ¶¶ 10-11.) Deputy Benson declares that Plaintiff grabbed the door of his cell with his right hand and resisted entering the cell, and Benson "pulled Mr. May's hand from the door, placed it in an arm bar, and gave a slight shove towards the interior of the cell," whereupon, "Mr. May tripped on his sandals and fell on the floor." (Jake Benson Declaration, Dkt. 16, ¶¶ 9-10.) There is no affidavit from Defendant Hartgrave, but his written report states: "May grabbed hold of the door, and Deputy Benson pulled his arms off the door. I then pulled May into his cell. May tripped over his feet and fell onto the floor on his butt." (Twin Falls County Incident Report, Dkt. 18-3, p. 2.)

Plaintiff further alleges that, after Deputy Benson allegedly struck Plaintiff to the ground, Defendant Benson picked him up off the ground, and Benson, Alvey, and Hartgrave threw him to the ground again. Plaintiff alleges that his head was bleeding and he had a bad bruise on his arm and hip from being thrown to the ground. (Dkt. 22-1, ¶¶

---

(Complaint, Dkt. 1, ¶ 40), to "Benson struck me with an open hand in the back of the head where I had had the surgery so hard that I was stunned" (Plaintiff Decl., Dkt. 22-1 ¶ 24.) Alvey declares that "[a]t no time did any deputy strike Mr. May with a closed fist." (Dkt. 17, ¶ 13.)

**MEMORANDUM DECISION AND ORDER - 9**

25-27.) Defendants dispute Plaintiff's allegation that he was picked up again, thrown to the ground a second time, that he hit or injured his head, or that his head was bleeding. (Compare Dkt. 22-1, ¶¶ 25-27, with Dkts. 16,17.)

Defendants also dispute Plaintiff's allegations that Benson later told Plaintiff, over the loudspeaker system, that if Plaintiff hadn't had enough, he would be happy to come down and give him more.[6] (Compare Dkt. 22-1, ¶ 22, with Dkts. 16, 17.)

Defendants contend that the injuries Plaintiff received were de minimis, and therefore under any view of the facts Plaintiff is precluded from relief. The Court is not so persuaded. As explained in *Wilkins v. Gaddy*, 559 U.S. 34 (2010):

> [In *Hudson v. McMillian*, 503 U.S. 1 (1992)], this Court rejected the notion that "significant injury" is a threshold requirement for stating an excessive force claim. The "core judicial inquiry," we held, was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S.Ct. 995; *see also Whitley v. Albers*, 475 U.S. 312, 319–321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident.

*Id*. at 37.

The Court concludes that a genuine dispute of fact exists regarding whether Defendant Benson struck him on the back of the head, and whether Defendants Benson,

---

[6] Conversely, in the Complaint, Plaintiff alleges that "deputies repeatedly mocked Mr. May by saying that *the officer who had shot him* was coming back to finish him off. This mocking occurred *when the officer who shot Mr. May entered the Facility*." (Complaint, Dkt. 1, ¶¶ 45-46) (emphasis added)

**MEMORANDUM DECISION AND ORDER - 10**

Alvey, and Hartgrave threw him to the ground again. If, in fact, Deputy Hartgrave authorized Plaintiff to go to the nurse to receive his medication, but the deputies struck him on the head on his wound from the surgery with such force that it knocked him to the ground, and then threw him to the ground a second time – all to prevent Plaintiff from following Deputy Hartgrave's instruction – a jury could find that the deputies actions' violated either of the standards governing excessive force. Therefore, a jury must decide who is credible, which acts occurred, and whether any of the acts amounted to excessive force under the circumstances.

3. **Policy-Based Claims Against Tom Carter and Twin Falls County Sheriff's Office**

   A. *Standard of Law*

   A municipality may not be held liable under a respondeat superior theory under 42 U.S.C. § 1983. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). Rather, a § 1983 claim against a municipality must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains. *Id.* at 694.[7] That is, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

   Requisite elements of a § 1983 policy-based claim against a municipality are: (1)

---

[7] A suit against individual defendants in their official capacity is essentially the same as a suit against the municipality. *See Monell*, 436 U.S. at 690, n. 55.

**MEMORANDUM DECISION AND ORDER - 11**

the plaintiff was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). Several decisions of the United States Supreme Court lay the template for analysis of failure-to-train claims against municipalities. *See Connick v. Thompson*, 131 S.Ct. 1350 (2011); *Board of County Commissioners of Bryan County, Okahoma v. Brown*, 520 U.S. 397 (1997); and *City of Canton v. Harris*, 489 U.S. 378 (1989).

The parties quarrel over which particular failure-to-train theory governs this instance. Plaintiff asserts that Defendants took *no* steps to prevent employee violence against inmates. Plaintiff argues that the absence of a specific policy on excessive force is the equivalent of a policy of deliberate indifference. Defendants argue that they *did* have a policy in effect to protect inmates in 2011.

In *Connick v. Thompson*, the United States Supreme Court observed that, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." 131 S.Ct. at 1359. The *Connick* Court described two ways for a plaintiff to show deliberate indifference of a municipality in a failure-to-train context:

> (1) A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. *Bryan Cty.*, 520 U.S., at 409, 117 S.Ct. 1382.

**MEMORANDUM DECISION AND ORDER - 12**

> Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.*, at 407, 117 S.Ct. 1382. Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

> (2) In *Canton*, the Court left open the possibility that, "in a narrow range of circumstances," a pattern of similar violations might not be necessary to show deliberate indifference. *Bryan Cty.*, supra, at 409, 117 S.Ct. 1382. The Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force. *Canton*, supra, at 390, n. 10, 109 S.Ct. 1197. Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights. *Bryan Cty., supra*, at 409, 117 S.Ct. 1382. The Court sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.

131 S.Ct. at 1360-61.

### B. *Discussion*

Plaintiff's Complaint contains the following policy-based claims:

> At all times relevant to the complaint, the Twin Falls County Sheriff's Office had in place a policy or custom which was the moving force behind the assault and battery and/or extreme indifference on Mr. May at the Facility, of which amounted to deliberate indifference of Mr. May's Constitutional rights.

> Defendant Tom Carter was responsible for putting in place the customs or policies that were the driving force behind the battery on Mr. May.

**MEMORANDUM DECISION AND ORDER - 13**

(Complaint, Dkt. 1, ¶¶ 48-50.)

Defendants argue, and the Court agrees, that these allegations are the type of bare statements of only the legal standard with insufficient supporting facts that were found lacking in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Here, it is unknown whether Plaintiff is alleging the "failure to protect, failure to train, failure to supervise, or failure to control subordinates." (Reply, Dkt. 26, p. 2.) Because Defendants seek summary judgment and discovery is now closed, the question is not whether the pleading is sufficient, but whether Plaintiff has produced sufficient evidence from which a jury could find that a municipal policy caused the alleged constitutional violation at issue.

After discovery and in his Response to the Motion for Summary Judgment, Plaintiff clarified that his theory is one that "liability arises because Defendants Twin Falls and Tom Carter took no steps to protect prisoners from violence by guards despite knowledge of such violence." (Response, Dkt. 22, p. 7.) Plaintiff cites to the fact that Defendants' particular excessive force policy was not adopted until April 5, 2013, well after Plaintiff's incident–"Custody Use of Force Policy C522 (TFCOUNTY 1203-1210)." (Dkt. 22, p. 7.) As an indicator that Defendants were placed on notice of this deficiency in training, Plaintiff cites two incidents of alleged excessive force that occurred four days before Plaintiff's incident, as well as an incident that occurred fourteen days after Plaintiff's incident. (Response, Dkt. 22, pp. 8-9.)

Defendants argue that Plaintiff may not use the "absence of a policy" or "absence

**MEMORANDUM DECISION AND ORDER - 14**

of training" theory because Defendants have, in fact, produced a policy designed to protect inmates that Defendants had in effect at the time of Plaintiff's injury, *i.e.*, Twin Falls County Sheriff's Office Policy 300 ((TFCSO 32-36). Plaintiff did not produce this policy to the Court to show that was no policy designed to protect inmates that was in place in 2011, and Plaintiff has the burden to prove the existence of an unconstitutional policy.

Other jail documents indicate that some type of "use of force" policy was in effect at the time of Plaintiff's injuries, including (a) the "Use of Force" Board report that reflects the existence of a "Use of Force" Board that "reviewed the deputies' use of force and found that the use of force was reasonable under the circumstances" (Hughes Declaration, Dkt. 18, ¶ 16 & Exhibit C, TFCOUNTY 947-948), and (b) the "Rules and Regulations" manual for inmates that states: "You have a right to be free from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment." (Dkt. 18-1, p. 4.)

As to causation, Plaintiff has failed to provide any evidence showing that these particular Defendants were *not* trained in accordance with policies designed to protect inmates that were in effect at the time of the alleged incident. There are no depositions of these deputies, or affidavits of other deputies, showing that no training was provided on how deputies should physically handle noncompliant or disruptive inmates that would provide a causal link between a failure to train and Plaintiff's incident.

On this record, under any formulation of the "absence of training" theory, Plaintiff

has failed to bring forward facts from which a jury could find that an absence of training or absence of a more particular policy *caused* Plaintiff's alleged injuries. First, under the *Bryan County* pattern-of-violations theory, Plaintiff has not shown that a pattern of similar excessive force violations occurred prior to his incident of which Defendants were aware in time to make policy changes. Two incidents four days prior to Plaintiff's incident did not place Defendants on notice that the deputies needed more training in the appropriate use of force in time to prevent Plaintiff's incident.

Second, under the *City of Canton* "rare possibility" theory, Plaintiff has not shown that there is a complete absence of a policy or absence of any training, together with a grave risk of harm, such as allowing deputies free use of their firearms to keep inmates under control in the jail. Nor has Plaintiff provided evidence showing that the deputies actually were untrained in the appropriate amount of force to use, or that, in the absence of any training, they actually did not know the appropriate amount of force to use under the circumstances. Accordingly, Defendants Tom Carter and Twin Falls County Sheriff's Office are entitled to summary judgment.

# ORDER

**IT IS ORDERED:**

1. The following claims are DISMISSED *with* prejudice: (1) all claims against Defendants Probasco and Slickers; (2) all claims against Twin Falls County Sheriff's Office; (3) all claims against Tom Carter.

2. The following claims are DISMISSED *without* prejudice: (1) claims against Defendant Hartgrave; (2) claims against Nurse Jane Doe and Does I-X; (3) all claims of verbal abuse.

3. Defendants' Motion to Dismiss (Dkt. 13) is MOOT; Defendant's Motion for Summary Judgment (Dkt. 13) is GRANTED in part, as set forth above, and DENIED as to the excessive force claims against Defendants Benson and Alvey.

4. The parties shall contact the ADR Director, Susie Boring-Headlee, within the next ten days if they are interested in attending a settlement conference. Otherwise, the Court will set this matter for a jury trial.

DATED: **March 31, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge